IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| SHEILA BOBB, *et al.*, | : |
| | : |
|    Plaintiffs, | : |
| | : |
| v. | :   CASE NO.: 1:12-CV-196 (WLS) |
| | : |
| ELBERTA CRANE AND BOX CO., | : |
| | : |
|    Defendant. | : |
| | : |

## ORDER

Presently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 16). For the following reasons, Defendant's Motion for Summary Judgment (Doc. 16) is **GRANTED.**

### I.  PROCEDURAL HISTORY

On December 20, 2012, Plaintiffs filed the Complaint in this sex discrimination action under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e, *et seq.* (*See* Doc. 1.) On February 1, 2013, Defendant Elberta Crane and Box Company ("Elberta") answered the complaint. (Doc. 6.) After discovery, Elberta moved for summary judgment. (Doc. 16.) In support of summary judgment, Elberta contends: (1) Plaintiffs cannot establish a prima facie case, and (2) Plaintiffs cannot rebut Elberta's legitimate nondiscriminatory reason for Plaintiffs' termination. (*See* Doc. 17.) On March 3, 2014, with an extension from the Court, Plaintiffs filed a response in opposition to Elberta's Motion for Summary Judgment. (Docs. 20-23.) On March 18, 2014, Elberta filed a reply. (Doc. 26.) Thus, the above-referenced motion is ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).

## II.     SUMMARY JUDGMENT STANDARD

### A.     Federal Rule of Civil Procedure 56

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, No. 12-15994, 2014 WL 92094, *3 (11th Cir. Jan. 10, 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.' " *Matsuhita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to

record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### B. Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. Here, Elberta properly filed a summary judgment motion with a statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (*See* Docs. 16-18.) Likewise, Plaintiffs filed the proper response to Elberta's statement of material facts. (*See* Doc. 24.) Having established the applicable standards, the Court will proceed to the facts.

### III. RELEVANT FACTUAL BACKGROUND

The following facts are derived from the Complaint (Doc. 1); Elberta's Answer (Doc. 6); Elberta's Statement of Undisputed Facts (Doc. 18); and Plaintiffs' Response to Elberta's Statement of Undisputed Material Facts (Doc. 24); and the record in this case.

Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Plaintiffs as the nonmovants. *See* Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 322-23.

Elberta is a business based in Bainbridge, Georgia. (Docs. 18 at ¶ 1, 24 at ¶ 1.) The eight named Plaintiffs were employed at Elberta's veneer mill in Bainbridge. (*Id.*) Plaintiffs were employed as "feeders," a position which requires the worker to take pieces of wood that are used to make wooden crates and "feed" them into a dryer. (Docs. 18 at ¶ 2, 24 at ¶ 2.) The dryer dries the veneer finish on each separate piece of wood. (*Id.*) "Bundlers" bundle the wood pieces together using a strapping machine after the pieces are pulled from the dryer. (*Id.*) The strapping machine is affixed with various warning labels, but no worker has reported to Elberta that they were injured using that machine. (Docs. 18 at ¶ 3, 24 at ¶ 3.) "Feeders" generally do not operate the strapping machines but have occasionally picked up the wood and set it aside after it comes out of the other end of the dryer so that a "bundler" may get the wood and "bundle" it at a later time. (Docs. 18 at ¶ 4, 24 at ¶ 4.)

On Friday, April 1, 2011, Plaintiffs Bobb, Carlyle, Jones, Wade, Kindle, and Phifer were feeders/sorters for Dryer No. 1, Plaintiff Ansley was a feeder/sorter for Dryer No. 2, and Plaintiff Handsford was a "floater" on the third shift, which was from 11:30 p.m. on Friday night until 7:30 a.m. on Saturday morning.[1] (Docs. 18 at ¶ 5, 24 at ¶ 5.) Only one of the four bundlers scheduled to work on the third shift that day arrived at Elberta to work. (Docs. 18 at ¶ 6, 24 at ¶ 6.) Because the wood was not being bundled at the typical speed, Supervisor George Tomlin instructed the six feeders assigned to Dryer No. 1 to clean the area around that dryer and stack wood on the table in anticipation of the arrival of the pullers/bundlers. (*Id.*) Plaintiff Ansley was a feeder/sorter assigned to Dryer No. 2, so she continued in the performance of her duties. (Doc. 24 at ¶ 6.) Mr. Tomlin called the veneer mill manager, Brad Dodson, for advice as to what to do

---

[1] A "floater" is a worker who cleans various rooms, and relieves feeders/sorters when they momentarily leave their position. (Doc. 24 at ¶ 5.)

4

without the bundlers. (Docs. 18 at ¶ 7, 24 at ¶ 7.) Mr. Dodson called the plant manager, Tim Dean, around 12:30 a.m. on Saturday morning. (*Id.*) Mr. Dean instructed Mr. Dodson to tell Mr. Tomlin that the wood had to be dried because it would otherwise mold because of the wet veneer. (Docs. 18 at ¶ 8, 24 at ¶ 8.) Mr. Dean also stated that the feeders should be split up so that some would feed the wood, and others would pull it after it went through the dryer and set it in a box so that it could be bundled the following Monday. (*Id.*) Mr. Dean told Mr. Dodson not to have any of the Plaintiffs bundle the wood because they were not trained as bundlers. (*Id.*) Mr. Dodson relayed Mr. Dean's instruction to Mr. Tomlin but, because Mr. Tomlin was busy, he told Don Pollard, a fork-lift operator, to instruct Plaintiffs. (Docs. 18 at ¶ 9, 24 at ¶ 9.) Mr. Pollard told Plaintiff Bobb that two employees should sort wood for Dryer No. 1, two employees should feed Dryer No. 1, and two employees should pull and bundle the dried wood from Dryer No. 1. (Doc. 25-1 at ¶ 13.) Although Plaintiff Bobb told Plaintiff Carlyle at least a portion of Mr. Pollard's instructions, Plaintiff Bobb did not tell any other Plaintiff what Mr. Pollard had said or comply with his instructions because Plaintiffs were not trained to operate the bundler, a machine viewed by Plaintiffs as dangerous. (Docs. 16-1 at 65, 25-1 at ¶¶ 13-14.) Mr. Pollard noticed that Plaintiffs did not comply with his instructions, so he informed Mr. Tomlin of such. (Docs. 18 at ¶ 10, 24 at ¶ 10.) Mr. Tomlin never returned to speak with Plaintiffs. (*See* Docs. 24 at ¶ 10, 25-1 at ¶ 12, 25-2 at ¶ 12.)

Mr. Dean was called at his home and told that Plaintiffs refused to do as instructed. (Docs. 18 at ¶ 12, 24 at ¶ 12.) Mr. Dean drove from his home to the plant, arriving there shortly before 1:00 a.m. on Saturday morning. (*Id.*) Mr. Pollard and Mr. Tomlin told Mr. Dean that they had communicated Mr. Dean's instructions to Plaintiffs and Plaintiffs refused to do the work as instructed. (Docs. 18 at ¶ 13, 24 at ¶ 13.) Mr. Dean was angry and red-faced when he arrived at the plant on Saturday morning. (Docs. 18 at ¶ 15, 24 at ¶ 15.) Mr. Dean instructed the Plaintiffs who were working on Dryer No. 1 to congregate around him. (Docs. 18 at ¶ 14, 24 at ¶ 14.) Plaintiff Ansley said that Plaintiffs did not need to pull wood because it was too dangerous, and Mr.

Dean overheard her comment.  (Docs. 16-1 at 48, 18 at ¶ 14, 24 at ¶ 14.)  While standing in front of Plaintiffs, Mr. Dean asked Mr. Tomlin and Mr. Pollard whether they communicated Mr. Dean's instructions to Plaintiffs, and both men stated that they had and that Plaintiffs failed to comply with those instructions.  (Docs. 18 at ¶ 16, 24 at ¶ 16.)  After Mr. Dean's conversation with Plaintiffs, they split up and performed the tasks as directed.  (Docs. 18 at ¶ 17, 24 at ¶ 17.)

Before he left the plant on Saturday morning, Mr. Dean specifically asked Mr. Pollard whether Plaintiffs had been told to "bundle the wood."  (Docs. 18 at ¶ 18, 24 at ¶ 18.)  Mr. Pollard told Mr. Dean that they had been told that two workers should separate the veneer, two should spread the veneer, and two should pull the dry veneer and put it into boxes, but they were not told to bundle the wood.  (*Id.*)  Mr. Dean also asked Milton Bruce whether any of the Plaintiffs had ever pulled wood from the dryer.  (Docs. 18 at ¶ 19, 24 at ¶ 19.)  Mr. Bruce responded that Plaintiffs Bobb and Carlyle had done so in the past.  (*Id.*)  Plaintiff Carlyle had once taken wood out of the end of the dryer on her own initiative because, in her opinion, doing so was the responsible thing to do when no one was available to take the wood off.  (Docs. 18 at ¶ 20, 24 at ¶ 20.)  Lastly, Mr. Dean told Ronnie Fowler, Elberta's Director of Human Resources, that Plaintiffs had refused to do the assigned tasks as instructed by their supervisor.  (Docs. 18 at ¶ 21, 24 at ¶ 21.)  Mr. Dean made the decision to terminate Plaintiffs for insubordination and causing a loss of production.  (Docs. 18 at ¶ 22, 24 at ¶ 22.)  On the morning of Monday, April 4, 2011, Mr. Dean drafted an email to the President of the company that explained his decision to terminate Plaintiffs and outlined the circumstances regarding their behavior.  (*Id.*)  On Monday night, Mr. Dean informed the Plaintiffs that they were being terminated for insubordination.  (*Id.*)

Before Plaintiffs' termination, Elberta was considering automating the feeder function.  (Docs. 18 at ¶ 23, 24 at ¶ 23.)  After Plaintiffs' termination, the third shift was shut down for about two years.  (*Id.*)  When the third shift was later resumed, the feeder function previously performed by Plaintiffs was automated.  (*Id.*)

6

Prior to their termination, Plaintiffs felt as though they had been treated fairly by Mr. Tomlin, and Plaintiffs never experienced any instances of comments or remarks about their gender. (Docs. 18 at ¶ 24, 24 at ¶ 24.) Plaintiff Jones believes that the reason for the termination was based on a misunderstanding of Mr. Dean's instructions as communicated by Mr. Pollard. (Docs. 18 at ¶ 25, 24 at ¶ 25.) The Union Contract at Elberta prohibited termination of employment based solely on one unexcused absence from work. (Docs. 18 at ¶ 27, 24 at ¶ 27.) For that reason, the absent bundlers referenced above could not have been terminated solely for their unexcused absence. (*Id.*) The three absent bundlers were issued disciplinary actions in accordance with the Union Contract for failing to show up for their assigned shift. (*Id.*) Six of the eight Plaintiffs had unexcused absences from work and were not terminated for that reason. (Docs. 18 at ¶¶ 28 & 29, 24 at ¶¶ 28 & 29.)

## ANALYSIS

When a plaintiff seeks to prove sex discrimination through circumstantial evidence, as do the Plaintiffs in the instant case,[2] the Court is guided by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Cobb v. City of Roswell, Ga.*, 533 F. App'x 888, 893 (11th Cir. 2013) (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999)). Under that framework, in order to establish a prima facie case of sex discrimination under Title VII, each Plaintiff must show that she: 1) is a member of a protected class; 2) was qualified for the position; 3) suffered an adverse employment action; and 4) was treated less favorably than similarly situated employees outside of her protected class, or was replaced by someone outside of her protected class. *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842 (11th Cir. 2000). If the claimant establishes a prima facie case of discrimination, a presumption of discrimination is created, and the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment

---

[2] Although Plaintiffs assert that there is direct evidence of discrimination, the Court finds that no such evidence has been presented. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987)) (defining direct evidence as "evidence, which if believed, proves existence of fact in issue without inference or presumption").

7

action to rebut the presumption. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). If the defendant produces such evidence, the plaintiff must demonstrate that the employer's stated reason is pretext for discrimination. *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012). Because Elberta does not dispute that Plaintiffs were members of a protected class, qualified for their positions, and suffered adverse employment actions, the only issues before the Court are whether Plaintiffs met their burden of establishing a prima facie case, whether Elberta offered a legitimate, nondiscriminatory reason for the adverse employment action, and whether Plaintiffs rebutted that reason by demonstrating that it was pretext for discrimination.

### A. Plaintiffs' Prima Facie Case

Elberta argues that Plaintiffs failed to establish a prima facie case of discrimination because they were not replaced by anyone outside of their protected class and they have not identified "evidence that any similarly-situated male employees were treated more favorably than the Plaintiffs." (Doc. 17 at 5.) Plaintiffs assert that the male bundlers who did not show up for work for the third shift on April 1, 2011, and the supervisors involved are proper comparators. (Doc. 23 at 10.) Plaintiffs state that the male bundlers and supervisors involved were to blame for the problems that occurred, but none of those individuals were terminated. (*See id.*) In the alternative, Plaintiffs claim that comparators are not necessary in this case because the male management's actions constitute a "convincing mosaic" which would allow the jury to infer discrimination. (*See id.*)

"To make a comparison of the plaintiff[s'] treatment" to the treatment of employees outside of the plaintiffs' protected class, "the plaintiff[s] must show that [they] and the employees are similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted). "The proffered comparator 'must be nearly identical to the plaintiff[s].' " *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (citing *Holifield*, 115 F.3d at 1562). A plaintiff must "show that she was similarly situated to [a purported comparator] in terms of performance, qualifications, and conduct, 'without such differentiating or mitigating

8

circumstances that would distinguish' their situations." *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). "To establish a comparator in the disciplinary context, the quantity and quality of a comparator's misconduct must be nearly identical to the plaintiff[s'] misconduct." *Aristyld v. City of Lauderhill*, 543 F. App'x 905, 907 (11th Cir. 2013) (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)). "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (citing *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998)). A person is not disqualified from being a comparator simply because he or she does not share the same job title as the plaintiff. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011) (citing *Rioux v. City of Atlanta*, 520 F.3d 1269, 1281 (11th Cir. 2008)). "The relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies." *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999) (citing *Nix v. WLCY Radio/Rahall Commuc'ns*, 783 F.2d 1181, 1186 (11th Cir. 1984)).

The Court finds that neither the male bundlers nor the male supervisors are proper comparators. The evidence is undisputed that the male bundlers were absent without excuse whereas Mr. Dean believed that Plaintiffs were insubordinate. The Union Contract prohibited Elberta from terminating the bundlers solely for one unexcused absence. There was no such prohibition regarding the termination of Plaintiffs for insubordination. When some of the individual Plaintiffs were previously absent without excuse, they were issued the same punishment as the male bundlers on April 1, 2011. As to the supervisors, no evidence has been identified to suggest that Mr. Dean had knowledge or any reason to know that any supervisors involved in the miscommunication with Plaintiffs were being insubordinate. Further, although a miscommunication took place, there is no evidence to suggest that the male management conspired to make Plaintiffs appear to be insubordinate. The Court finds

that neither the male bundlers nor the supervisors involved are proper comparators because their behavior as compared to that of Plaintiffs is distinct.

Even without a proper comparator, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff[s], presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.' " *Lockheed-Martin Corp.*, 644 F.3d at 1328 (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)).  The evidence is undisputed that three male bundlers were absent on April 1, 2011, and their absences were not excused.  Because of their absences, wood that was being fed into the kiln was not being pulled and bundled at the proper rate of speed.  As a result, George Tomlin told Brad Dodson of the problem, and Mr. Dodson contacted Tim Dean.  Mr. Dean instructed Mr. Dodson to tell Mr. Tomlin to tell Plaintiffs to split into groups of two: two to feed the wood into the kiln, two to pull the wood from the kiln, and two to stack the wood in boxes for the bundlers.  Mr. Tomlin was busy, so Don Pollard relayed that message to Plaintiffs.  Mr. Pollard told Plaintiffs the wrong information.  Mr. Pollard's instructions involved bundling, a task which Plaintiffs viewed as dangerous.  When Mr. Tomlin learned that Plaintiffs were not doing what Mr. Dean had instructed, Mr. Tomlin called Mr. Dean.  Mr. Dean believed that the instructions were properly relayed to Plaintiffs and left his home around 1:00 a.m.  Mr. Dean traveled to the mill and delivered his instructions to Plaintiffs.  Once they received the instructions, they complied.  The evidence is undisputed that Mr. Dean terminated Plaintiffs because he believed that they refused to comply with his instructions as relayed by Mr. Pollard, and their refusal in turn led to a loss of production.  There is no evidence that Mr. Dean's decision was based on anything other than his honest—albeit erroneous—belief that Plaintiffs were insubordinate.  As such, there is no evidence that would allow a jury to infer intentional discrimination by Elberta.  For those reasons, the Court finds that Plaintiffs have failed to establish a prima facie case of discrimination.

### B. Pretext for discrimination

Elberta argues that, even if Plaintiffs demonstrated a prima facie case of discrimination, it is nonetheless entitled to summary judgment because the evidence is undisputed that Plaintiffs were terminated based on Mr. Dean's belief that they refused to comply with his instructions as communicated by another employee. (Doc. 17 at 7-11.) Plaintiffs assert that Elberta's proffered reasons for Plaintiffs' termination are undermined by the undisputed fact that Mr. Dean did not question any Plaintiff about her version of the events that transpired with Mr. Pollard, but instead relied solely on the version of events as relayed by Mr. Tomlin and Mr. Pollard. (Doc. 23 at 14.) Plaintiffs also state that any loss of production was not their fault, but the fault of the male bundlers who were absent from work. (*Id.*)

Even if Plaintiffs demonstrated a prima facie case of discrimination, Elberta has the opportunity to "rebut the presumption of discrimination by producing evidence that [there was] a legitimate, nondiscriminatory reason" for the adverse employment action. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* at 254-55 (citing *Bd. of Trs. of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 n.2 (1978)). Once the defendant meets this burden, the plaintiff must raise a genuine issue of fact as to whether the proffered reason for the adverse employment action is pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804-05. In other words, "once the employer offers evidence of a legitimate, nondiscriminatory reason for the adverse action, 'the *McDonnell Douglas* framework—with its presumptions and burdens—disappears, and the sole remaining issue is discrimination *vel non.*' " *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 n.1 (11th Cir. 2012) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000)). "The opportunity provided to a plaintiff to show pretext is simply an opportunity to present evidence from which the trier of fact can find unlawful discrimination." *Id.* Relevant evidence to demonstrate pretext includes the employer's disparate treatment of similarly situated employees outside of the plaintiffs' protected

11

class and the defendant's "general policy and practice with respect to minority employment." *McDonnell Douglas*, 411 U.S. at 804-05. However, "[c]onclusory allegations, without more, are not sufficient to raise an inference of pretext . . . where an employer has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (citing *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 443-44 (11th Cir. 1996)).

The Court finds that Plaintiffs have not demonstrated that Elberta's proffered legitimate, nondiscriminatory reason for their termination was a pretext for discrimination. The undisputed evidence demonstrates that Mr. Dean terminated Plaintiffs based on his erroneous belief that Plaintiffs had been insubordinate. "[An] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) (citing *Megill v. Bd. of Regents*, 541 F.2d 1073, 1077 (5th Cir. 1976)). "It scarce need to be said that Title VII is not a shield against harsh treatment at the workplace; it protects only in instances of harshness disparately distributed." *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. 1981). Plaintiffs have not made any showing or introduced any evidence to suggest that Mr. Dean's reason for terminating them was motivated by discriminatory animus. It is not the Court's role to inspect the correctness of an employer's employment decision. Because the evidence is undisputed that Mr. Dean's decision was based on his belief that Plaintiffs were insubordinate, and that decision was not influenced by discriminatory animus, the Court finds that Plaintiffs have failed to demonstrate that Elberta's legitimate, nondiscriminatory reason for Plaintiffs' termination was a pretext for discrimination.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 16) is **GRANTED.** It is hereby **ORDERED AND ADJUDGED** that Plaintiffs shall take nothing by their Complaint (Doc. 1), and **JUDGMENT** shall be entered in favor of Defendant.

**SO ORDERED**, this  23rd  day of June 2014.

/s/ W. Louis Sands
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**